IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PTI GROUP, INC. and<br>GROUP SERVICES LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>GIFT CARD IMPRESSIONS, LLC and<br>BRETT GLASS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 14-2063-CM<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Plaintiffs PTI Group, Inc. and Group Services Limited ("GSL") bring this action against defendants Gift Card Impressions, LLC ("GCI") and Brett Glass. GSL and GCI previously had a business relationship. That relationship deteriorated. Instead of immediately initiating litigation, however, the parties entered into a settlement agreement—one that ultimately did not accomplish its purpose.

The dispute now before the court arises out of that settlement agreement. GCI and Mr. Glass became convinced that GSL had committed fraud in reaching the settlement agreement. To remedy the perceived problem, GCI and Mr. Glass started asking for additional money. In response, GSL brought this action, claiming that GCI and Mr. Glass breached the settlement agreement; engaged in business defamation; and violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). The court now takes up a motion filed by GCI and Mr. Glass: Defendants' Motion to Dismiss RICO Claims Pursuant to Rule 12(b)(6) (Doc. 30).

I.    **Factual Background**

A full history of the factual basis for the case is unnecessary for resolution of the instant motion (which is limited to the RICO claims). Instead, a brief summary of the actions relevant to plaintiffs' RICO claims is sufficient. The following timeline is highly summarized and generalized, for background purposes only. The court has considered the allegations in the complaint in the light most favorable to plaintiffs—even those allegations not mentioned below.

- **March 2012:** The parties entered into the settlement agreement, under which GSL paid GCI a little over $100,000. GCI released GSL of all debts and GSL agreed to cooperate with GCI in investigating claims that GCI might have against other parties. GCI and GSL also agreed not to disparage each other.

- **November 2012:** After GCI requested information from GSL and did not receive it, GCI filed suit against GSL (another federal suit—not the one presently before the court).

- **September 2013:** GCI dismissed its suit after failing to serve process on GSL.

- **October 22, 2013:** Mr. Glass wrote an email to Victor Leung, co-founder of GSL, stating that he believed that GSL owed GCI money and was not forthcoming with "accurate and honest information." (Doc. 27 at 11.) Further, Mr. Glass stated:

    > Usually, when a party does not pay another party or takes things they are not entitled to it creates strong negative feelings. I know you had to face this before when a tin factory felt GSL owed them money and sent 'collectors' out to get their money. I am sure this was very uncomfortable and it was ultimately solved when the money was finally paid . . . . This problem won't ever go away until it is made right.

    (*Id.* at 13.)

- **November 7, 2013:** Mr. Glass made disparaging statements about GSL and Todd Grisoff (one of GSL's founders) to an employee of another company. He also emailed Mr. Leung again, accusing him of overcharging and lying about it. Mr. Glass assured Mr. Leung that "[t]his will

continue to escalate until all monies and legal fees are returned to GCI" and that GCI "will chase this down in the US, in China and also in Hong Kong through every way possible until this money is paid back." (*Id.* at 14.)  Finally, Mr. Glass cautioned, "Please do not doubt the many alternatives we have to collect our money . . . PLEASE do not force our hand any further, but know we will take it much further if given no other choice." (*Id.*)  He concluded his email to Mr. Leung stating, "Either do the right thing quickly or you will be held responsible for the consequences." (*Id.*)

- **December 11, 2013:**  Mr. Glass continued writing emails to others, disparaging GSL.  He also suggested that the others should tell GSL to pay the purported debt quickly.  And he hired the Hong Kong-based law firm of Robinsons, Lawyers, who delivered a letter to Mr. Leung demanding payment and stating that GCI would engage a collection agent if GSL did not pay $100,000 to GCI.

- **January 22, 2014:**  "Collectors" arrived at GSL's Hong Kong office.  The court will not repeat the details of the scene here, but plaintiffs allege that two men "aggressively menaced GSL's employees." (*Id.* at 16.)  They demanded a payment of $140,000 from GSL's owners, implying that if the money was not paid within a week, two more men would arrive and use even more aggressive tactics.  GSL employees feared for their safety.

- **March 10, 2014:**  This court entered a preliminary injunction, prohibiting Mr. Glass and GCI from further attempting to collect payment on the claims released under the settlement agreement, disparaging released parties, and contacting released parties.

## II.   Legal Standard

In considering defendants' Rule 12(b)(6) challenges, all well-pleaded factual allegations—as distinguished from conclusory allegations—are accepted as true and viewed in the light most favorable

to plaintiffs.  To survive this motion, plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is not sufficient if it offers "naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal citation and quotation omitted).

### III.     Discussion

Defendants argue that plaintiffs' RICO claims against both GCI and Mr. Glass should be dismissed because plaintiffs failed to adequately allege the elements of a RICO claim.  To state a RICO claim, a plaintiff must plead the following elements: "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).  Defendants argue that plaintiffs have not made sufficient allegations as to any of the elements.  The court, however, only addresses one of defendants' arguments: whether plaintiffs have alleged facts that could show a pattern of racketeering activity.  The answer is no.

To adequately allege a pattern of racketeering activity, a RICO plaintiff must show (1) a relationship between the predicate acts and (2) the threat of continuing activity. *H.J. Inc. v. NW Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) ("To satisfy RICO's pattern requirement[, a plaintiff must] allege not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.") (emphasis in original) (citation omitted)).  A plaintiff may demonstrate a threat of continuing activity by establishing either closed-ended or open-ended continuity, which mean:

> [C]losed-ended continuity requires a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months are insufficient.  Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct.

-4-

*Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989) (internal quotations and citations omitted); *see also H.J. Inc.*, 492 U.S. at 241 (stating that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement"); *Erickson v. Farmers Group, Inc.*, 151 F. App'x 672, 678 (10th Cir. 2005) (holding that a "few months" was too short of a time period to show closed-ended continuity); *Montez v. Montez*, No. 89-4050-R, 1991 WL 33461, at *3 (D. Kan. Feb. 22, 1991) (holding that four months was insufficient for closed-ended continuity). The predicate acts may not be isolated events. *Bixler*, 596 F.3d at 761 (emphasis and citation omitted).

For purposes of this motion, the court assumes that the actions of GCI, Mr. Glass, the law firm, and the collectors constituted predicate acts. But plaintiffs have neither alleged that the acts continued over a substantial amount of time nor that there is any clear threat of related future criminal activity.[1] *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (explaining that acts extending over 23 months may be a "substantial period of time" but holding that continuity was not established because "the facts as alleged fail to show any threat of 'future criminal conduct'"). At most, plaintiffs have alleged isolated events that are directed at one discrete goal: collecting a debt from GSL. RICO does not cover actions that will stop once a limited, discrete goal is met. *See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993) (stating that most courts have not found continuity when a scheme has a limited purpose) (citations omitted); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) (finding no continuity with "one discrete goal"); *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928–29 (10th Cir. 1987) ("A scheme to achieve a single discrete

---

[1] Plaintiffs suggest that the future criminal activity was all-but-certain until the court entered its preliminary injunction. But the key here is that any future criminal activity is not expected *outside the context* of this limited dispute over funds. Defendants' activity only relates to an isolated attempt to collect money, and that is the critical problem with plaintiffs' RICO claims.

objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished.").

Plaintiffs have alleged the following:

- a closed-ended series of predicate acts (threatening and initiating collection actions on an allegedly released debt)
- constituting a single scheme (undertaking collection efforts)
- to accomplish a discrete goal (get paid the money GCI and Mr. Glass believe they are owed)
- directed at a finite group of individuals with no potential to extend to other persons or entities.

Recognizing a RICO claim in this instance would not serve the objectives of the statute. *See, e.g.*, *H.J. Inc.*, 492 U.S. at 242 ("Congress was concerned in RICO with long-term criminal conduct"); *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) ("At most, what Mr. Duran alleged is a property dispute which turned hostile at times. He has not, however, alleged the type of long-term criminal activity envisioned by Congress when it enacted RICO."). The court dismisses plaintiffs' RICO claims for lack of continuity.

One more note: plaintiffs criticize defendants for not discussing two cases in their opening brief—*Boyle v. United States*, 556 U.S. 938 (2009) and *United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009). While these cases discuss the test that must be applied for determining whether an enterprise exists, they have little bearing on the issue the court addresses here. In addition, they are factually distinct from this case and need not be discussed further in this opinion.


-7-

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss RICO Claims Pursuant to Rule 12(b)(6) (Doc. 30) is granted.

Dated this <u>16th</u> day of September, 2014, at Kansas City, Kansas.

                                                <u>s/ Carlos Murguia</u>
                                                **CARLOS MURGUIA**
                                                **United States District Judge**